**Modified as Affirmed and Opinion Filed August 22, 2013**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-12-00847-CR**
_____

**ROGELIO BELMONTE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F11-53040-L**

## MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Lang-Miers
Opinion by Justice Bridges

Appellant Rogelio Belmonte pled guilty to felony murder and appeals his sentence of 60 years' imprisonment and a $10,000 fine, arising from his conviction. In seven issues, appellant argues the trial court erred in: (1) overruling his challenge for cause to juror, Rudolph Reece; (2) overruling his challenge for cause to juror, Susan Friedman; (3) allowing television cameras into the courtroom; (4) overruling his motion for mistrial when the jury was being brought into the courtroom at the same time he was brought into the courtroom under restraint; (5) denying his objection to a video recording of himself in custody for a period of hours after his request for counsel; (6) overruling his objection to the charge that contained a statutory parole instruction that misled the jury; and (7) overruling his motion for new trial concerning juror misconduct. As modified, we affirm the judgment of the trial court.

## Background

Kaitlan Edmonson testified appellant drove them to Walmart in his truck on March 9, 2011, so they could look into cars for items worth stealing. Edmonson indicated they saw an elderly woman with a purse, and they decided to grab the purse. She said appellant called the woman to the car and apologized for pulling up so close to her car and basket. She said the woman walked over to the truck, and appellant leaned out of the window and grabbed her purse. When he grabbed the purse, appellant gunned the engine. Edmonson testified there was a commotion and, when they turned left out of the parking aisle, she thought they ran over something.

Kimberly Butler testified that she arrived at the same Walmart parking lot around 5:30 p.m. when she heard a woman screaming, "Somebody, help, help. Let go." Butler looked across the parking lot and saw a truck speeding through the aisle with a lady holding onto her purse and the truck. She explained when the driver turned the corner, the woman let go and the back tire ran over her. The incident was caught on video. The elderly woman died from the incident.

Appellant pled guilty to the charged offense of felony murder and elected to have a jury set punishment. During the punishment phase, the State presented State's Exhibits 2A through 25, which showed appellant's numerous adjudications and convictions for crimes which began when he was a young teenager in 1997 through 2009.[1] After hearing all of the evidence, the jury found appellant guilty of felony murder as charged in the indictment, and his punishment was assessed at 60 years' imprisonment and a $10,000 fine.

---

[1] The record reflects appellant's adjudications and convictions include the following offenses: delinquent conduct (4 in 1997); theft (2 in 2003); burglary of a building (2003); possession of a controlled substance (2003); failure to identify (2005); driving with a fictitious inspection document (2005); driving without a license (2005); possession of marijuana (2006); theft (2006); burglary of a motor vehicle (2006); theft (2006); fleeing a police officer (2006); driving while license invalid (2006); failure to identify (2006); burglary of a motor vehicle (2007); evading arrest (2007); assault (2009); reckless driving (2009); and failure with regards to duty on striking unattended vehicle (2 in 2009).

**Analysis**

## 1. *Challenges for Cause*

In his first and second issues, appellant contends the trial court erred in overruling his challenge for cause to prospective jurors Rudolph Reece and Susan Friedman. We afford great deference to the trial court's decision, because the trial judge is present to observe the demeanor of the veniremember and to listen to the tone of his voice. *See Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011). Consequently, we will reverse a trial court's ruling on a challenge for cause only if a clear abuse of discretion is evident. *See Davis v. State*, 313 S.W.3d 317, 344 (Tex. Crim. App. 2010).

### a. *Reece*

Appellant contends he moved to strike Reece for cause because, on the written questionnaire, he reported that his grandmother had been murdered. Reece's grandmother was 80 at the time of her murder, and the victim in this case was 76. Appellant argues the "close resemblance in age of this victim to his grandmother would produce a normal and natural bias against any defendant despite answers that it would not make a difference to him at all."

After juror questioning was completed, the trial court questioned Reece individually. Reece indicated his grandmother had been murdered 22 years ago in her bed when someone broke into her home. Reece stated the murder happened a long time ago, and he answered in response to a question on the questionnaire. Reece told defense counsel that the age of the victim would not make a difference. When asked if the offense involving his grandmother would come into play in his deliberations, Reece responded, "No, it won't." The trial court denied appellant's motion to strike for cause, and appellant subsequently used a peremptory challenge on Reece.

*b. Friedman*

During the State's voir dire examination, the prosecutor discussed appellant's right to remain silent and explained the law. Friedman indicated she would have a "hard time if he didn't speak up for himself." When asked if she would hold it against appellant if he did not testify even though she had been instructed by court not to consider it, Friedman replied, "I mean, I guess not by law." The prosecutor then explained she did not know if appellant was going to testify or not, and the following exchange took place:

[FRIEDMAN]: If I have to do it I have to do it.

[PROSECUTOR]: Okay. You would be able to abide by the law?

[FRIEDMAN]: Yes.

During the individual questioning of prospective jurors, the prosecutor reminded Friedman of the law and her previous answers and then asked if her position was that she would follow the law and not consider appellant's failure to testify. She said it was. Defense counsel followed up: "I just want that guarantee from you that you will not consider that in any way; is that correct?" Friedman responded, "Yes."

Following this exchange, Friedman voluntarily added she knew someone who had been sitting in the courtroom. She explained that she knew him through church, "[n]ot closely, but enough that I would trust everything he said" and that she saw him "socially, periodically." The trial court noted the man was not a witness or participant in the case. Friedman affirmed the fact the person was a spectator would not influence her in this case.

Defense counsel then moved to strike Friedman for cause, arguing as follows:

[DEFENSE COUNSEL]: Judge, we're going to move to strike [Friedman]. During her questioning as she was leaving, she did state that she recognized one of the observers. She knows him personally. She knows him well. He's a plaintiff's lawyer. He actually represents the complainant, the decedent's family in a suit against Wal-Mart. He is here specifically to listen to this along with [his] legal assistant. I have some concern that her knowledge about that and seeing that

–4–

he's here watching these proceedings is going to peak her interest and could cause her to look at this case and potentially call him. She even said if she saw him socially she would ask him about it. So that leaves us with some concerns of some outside influence coming in. We would ask that she be stricken.

The prosecutor responded:

[PROSECUTOR]: Judge, first of all, I disagree. I don't think she said she would ask him about it. I think she said she knew him socially. I think the Court was very clear with his questions about whether or not him being a spectator would influence her. She said absolutely not. He's not a witness. He's not going to be giving any testimony of such in this case, and he's actually representing the victim's family who haven't sued this defendant. So with regards to that she gave a clear answer when asked by the Court whether his appearance was going to make a difference and she said it wouldn't, and that answer suffices.

The court then determined Friedman would be "allowed." Appellant subsequently used a peremptory challenge on Friedman.

*c. Request for Additional Strikes*

Following the examination of individual prospective jurors, defense counsel argued as follows:

[DEFENSE COUNSEL]: We made a motion to strike two jurors. The Court has denied those two requests and has put us in a position where we will have to look at striking those two jurors. And the only equity we would have would be to request that the Court allow us two additional strikes to cure what we believe, respectfully so, is a mistake being made by the Court in a ruling. So we at this time are asking for two additional strikes.

The trial court denied the request for additional strikes.

*d. Review of Challenges for Cause*

In his first and second issues, appellant claims the trial court erred when it denied his challenges for cause to prospective jurors Reece and Friedman. The issue is whether the trial court's rulings on appellant's challenges for cause harmed him by effectively depriving him of one of his statutorily allotted peremptory challenges. *See Gonzales*, 353 S.W.3d at 830-31 (Tex. Crim. App. 2011); *Newbury v. State,* 135 S.W.3d 22, 30–31 (Tex. Crim. App. 2004); *Johnson v. State,* 43 S.W.3d 1, 6 (Tex. Crim. App.2001). Harm from the erroneous denial of a defense

challenge for cause focuses on whether a peremptory challenge "was wrongfully taken from" the defendant. *Johnson,* 43 S.W.3d at 6. Such harm occurs "(1) when a defendant exercises a peremptory challenge on a veniremember whom the trial court should have excused for cause at the defendant's request, (2) the defendant uses all of his statutorily allotted peremptory challenges, and (3) the defendant unsuccessfully requests an additional peremptory challenge which he claims he would use on another veniremember whom the defendant identifies as 'objectionable' and who sits on the jury." *Newbury,* 135 S.W.3d at 31. When these conditions are met, the trial court's erroneous denial of a defense challenge for cause harms the defendant by effectively depriving him of one of his statutory peremptory challenges because "he had to use a peremptory challenge to remove a veniremember who should have been removed for cause." *Id.*

The record reflects defense counsel used his peremptory strikes after appellant's challenges for cause were denied and after his request for additional peremptory strikes was denied. After exhausting his two peremptory strikes, the record further demonstrates appellant failed to identify a prospective juror whom he identified as objectionable and who sat on the jury. *See Newbury*, 135 S.W.3d at 31. Therefore, the appellant has failed to show that he was harmed by the trial court's failure to grant him the two additional challenges for cause he requested. *See id.* We conclude the trial court did not abuse its discretion and overrule appellant's first and second issues. *See Davis*, 313 S.W.3d at 344.

### 2. Television Cameras

In his third issue, appellant contends the trial court abused its discretion in allowing television cameras from the local media into the courtroom to video and audio record the testimony of the witnesses during the trial over his objection. Prior to the start of trial, defense counsel raised his concerns about the media. Although appellant did not want a television

camera inside the courtroom, he did not mind cameras outside the courtroom, filming through the windows in the courtroom doors. Defense counsel expressed his concern that a large production camera might affect the witnesses' testimony and might inadvertently film jurors located near the witness box.[2] The prosecutor took no position on the issue.

In response to appellant's concerns, the trial court stated as follows:

> For the record, the courthouse doors, having a lot of glass included, means that the witnesses will be seeing the camera regardless, whether it's inside or outside the courtroom proper. I don't see much difference between the inside-and-outside issue.
>
> ...
>
> At the Defense's request yesterday, the Court made a strong admonition to the jurors as a group that there would be coverage of this case; that the jurors' understanding that the coverage will not include them. The jurors have been strictly admonished regarding media. The Court is comfortable with the jurors' understanding that the media is here for the witnesses, not the jurors. So the jurors will not be filmed.
>
> In the Court's experience, the media here is professional. They know better than to film the jurors. The jurors understand that the media is simply a by-standard of the proceedings, and they've assured the Court that will not play a part in their deliberations.

After the jury was sworn and seated, the trial court instructed them:

> The Defendant is entitled to be judged by the law and the evidence that's produced in court, and only the law and the evidence produced in court.
>
> So, with that, I'm going to again admonish you to please keep an open mind. The media is here strictly as a bystander. You've assured the Court their presence will not be affecting your verdict.

In his brief, appellant relies on the *Estes* case to support his proposition that "a widely publicized and media intensive case can cause a 'circus atmosphere' due to the intrusion of the television equipment located inside the courtroom," and this denies appellant "his right to due

---

[2] At trial, defense counsel also raised concerns regarding a mistake in local media coverage and the manner in which jurors would be escorted from the courtroom. Those matters are not before us on appeal.

process of law by such allowance of the television camera recording the witnesses' testimony to be broadcast to the general public." *See Estes v. Texas*, 381 U.S. 532 (1965). We disagree.

*Estes* is not to be read as announcing a constitutional rule, barring television coverage in all cases and under all circumstances. *See Chandler v. Florida*, 449 U.S. 560, 573 (1981). Our sister court has already addressed this issue, noting each court has "all powers necessary for the exercise of its jurisdiction," and is to "control proceedings so that justice is done." *See Graham v. State*, 96 S.W.3d 658, 660 (Tex. App.—Texarkana 2003, pet. ref'd) (citing TEX. GOV'T CODE ANN. §21.001(a), (b)). Trial courts have broad and plenary power to regulate trials. *Ex parte Jacobs,* 664 S.W.2d 360 (Tex. Crim. App.1984). The courts have that inherent power over "the every day administration of justice" when handling criminal cases. *See Matchett v. State,* 941 S.W.2d 922, 932 (Tex. Crim. App.1996). "[A]bsent a constitutional provision, statute, or rule to the contrary, the trial court has the power to control the procedural aspects of a case." *Marx v. State,* 987 S.W.2d 577, 588 (Tex. Crim. App.1999) (Keller, J., dissenting).

We acknowledge that the "circus atmosphere" decried by the United States Supreme Court remains undesirable and inappropriate for criminal prosecutions. *See Graham*, 96 S.W.3d at 660. However, we also recognize that broadcast camera equipment circa 2012 is much different than the black and white pedestal cameras used in 1964. *See id.* There is nothing in this record to suggest the existence of the type of inappropriate atmosphere described in *Estes. See Estes*, 381 U.S. 532; *see also Chandler*, 449 U.S. at 810-11 (stating many of the negative factors found in *Estes*–cumbersome equipment, cables, distracting lighting, numerous camera technicians–are less substantial factors today than they were at that time).

We also note the Texas Supreme Court, in its Rules of Civil Procedure, has set out specific guidelines for the use of cameras in civil proceedings. TEX. R. CIV. P. 18c. Although this fact does not control our analysis, it emphasizes the fact that, in the absence of aggravating

factors, broadcast activity in a courtroom is not, standing alone, inappropriate when properly controlled by the court. To demonstrate prejudice, appellant must show something more than juror awareness that the trial was such to attract the attention of the media. *See Chandler*, 449 U.S. at 581. Here, appellant has offered nothing to demonstrate his trial was tainted by broadcast coverage. *Id.* at 579; *see also Hendershot v. State*, No. 13-10-00452-CR, 2012 WL 3242018, at *3 (Tex. App.—Corpus Christi Aug. 9, 2012, pet. ref'd) (not designated for publication).

We conclude that, under this record, the trial court did not abuse its discretion by permitting the media to remain in the courtroom. *See Graham*, 96 S.W.3d at 661. Therefore, we overrule appellant's third issue.

### 3. Mistrial

In his fourth issue, appellant argues the trial court erred in overruling his motion for mistrial "where the jury was being brought into the courtroom by the bailiff at the same time the defendant was being brought into the courtroom from the holdover cell under restraint." We review the denial of a motion for mistrial under an abuse of discretion standard and must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010).

The record reflects that after the bailiff started to bring the jury into the courtroom from a break, appellant was also being brought into the courtroom. Defense counsel requested to make a record, outside the presence of the jury, stating:

> [DEFENSE COUNSEL]: Judge, just so the record is clear, we were getting ready to start back up. The Defendant was in the holdover cell, had not been brought out yet. One of the bailiffs opened the door on the other side, proceeded to bring the jurors in. One juror definitely came through the door. Second juror was behind him, as the Defendant was coming out.
>
> I can't say that they saw it. I don't know for sure. But there was definitely some commotion going on. We were trying to stop it from happening. But I am going to have to object at this time and ask for a mistrial, based upon that.

–9–

The prosecutor responded that he did not believe the first juror looked toward appellant. Furthermore, he reminded the trial court that the State started its opening statement talking about appellant's jail calls and that appellant had already pled guilty to murder.

The trial court denied appellant's motion for mistrial as follows:

[COURT]: For the record, Defendant is in civilian clothes. The hallway from which he emerge[d] is not particularly identified as being jail proper. In light of that, the Court's going to overrule the Motion – deny the Motion for Mistrial.

Appellant argues that "all efforts should be maintained to prevent the jury from seeing the defendant in shackles, except where there has been a showing of exceptional circumstances or a manifest need for such restraint." *See Clark v. State*, 717 S.W.2d 910, 919 (Tex. Crim. App. 1986). However, the record before us is silent as to whether the jury actually saw shackles or whether appellant was, in fact, shackled. Therefore, appellant has failed to demonstrate he was prejudiced or harmed. *See Canales v. State*, 98 S.W.3d 690, 697 (Tex. Crim. App. 2003) (stating nothing in the record indicated the jury ever saw, or heard, or was otherwise aware, that defendant was wearing shackles, so he made no showing of harm or prejudice); *Cooks . State*, 844 S.W.2d 697, 722-23 (Tex. Crim. App. 1992) (any error in requiring defendant to wear shackles was harmless where record did not reflect that defendant's shackles were actually seen by the jury). We conclude the trial court did not abuse its discretion in overruling appellant's motion for mistrial and overrule his fourth issue. *See Coble*, 330 S.W.3d at 292.

### 4. *Video Recording of Appellant in Custody*

In his fifth issue, appellant contends the trial court erred in denying his objection to a video recording of him while in custody "after being mirandized and requesting a lawyer that portrays [him] for a period of four hours after his request for counsel." We review a trial court's ruling on a motion to suppress for abuse of discretion, and we review the record of the hearing on the motion in the light most favorable to the trial court's ruling. *Balentine v. State*, 71 S.W.3d

763, 768 (Tex. Crim. App. 2002); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

At a hearing outside the presence of the jury, defense counsel requested to suppress the portion of a surveillance video taken after he requested counsel.[3] Our review of the video shows a detective gave the *Miranda* warnings to appellant. Immediately thereafter, appellant asked about what his girlfriend had told them. The detective explained they would "get to that," and then asked appellant about the incident in question. Appellant requested a lawyer. At that point, the detective stopped the interview and told appellant the "lady died" and that he was being "charged with murder." Thereafter, the surveillance video continued to run and showed appellant crying and violent, knocking the walls and kicking the door. Appellant was offered an ambulance, but he refused. Appellant had been given water. Appellant was offered food, but he refused. Appellant was handcuffed by officers, and tried to slip free of the handcuffs. Thereafter, an officer remained in the interrogation room with appellant. Towards the end of the video, an officer asks appellant book-in questions (his address, emergency contact, physical condition, etc.).

The prosecutor argued he wanted to show the jury how appellant acted after the detective left the room–with violence–to rebut the defense's position at trial that appellant was remorseful and to show appellant was actually manipulative. Appellant, on the other hand, argued the detective's comment (the lady died and appellant was being charged with murder) was an interrogation technique and, because the camera showed appellant for a lengthy period of time afterwards, everything appellant said and did after the comment should be suppressed as being "testimony."

The trial court denied the motion, stating:

---

[3] The surveillance video was taken in an interrogation room.

> The police informing a defendant what he's charged with is hardly an interrogation technique. Most defendants want to know what they're being charged with.

The court allowed the detective's testimony and portions of the recording.

"Interrogation" must reflect a measure of compulsion above and beyond that inherent in custody itself. *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). An "interrogation" under *Miranda* refers to express questioning or any words or actions on the part of the police, other than those normally attendant to arrest and custody, that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Id.* at 301. Routine booking questions are, by definition, questions normally attendant to arrest and custody and "do not, by their very nature, involve the psychological intimidation that *Miranda* is designed to prevent. *Alford v. State*, 358 S.W.3d 647, 654 (Tex. Crim. App. 2012). At the same time, they serve a "legitimate administrative need." *See id.* (citing *United States v. Doe,* 878 F.2d 1546, 1551 (1st Cir.1989)).

Here, following the request for counsel, appellant was only asked whether he needed anything (food, water, ambulance) and routine book-in questions. We conclude there was no violation of *Miranda*, because none of these things constituted interrogation. *See Alford*, 358 S.W.3d at 654.

Furthermore, in order for appellant's actions to be considered testimonial, "an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990) (plurality op.). Only then is a person compelled to be a "witness" against himself. *See Doe v. U.S.*, 487 U.S. 201, 210 (1988). The video shows appellant for a period of almost four hours, and on the record before us, we conclude his actions were not testimonial. *See Muniz*, 496 U.S. at 589.

Therefore, we conclude the trial court did not abuse its discretion in denying appellant's motion to suppress and overrule his fifth issue. *See Balentine*, 71 S.W.3d at 768.

### 5. *Parole Instruction*

In his sixth issue, appellant contends the trial court erred in overruling his objection to the charge to the jury that contained the statutory parole instruction that misled the jury in its application to this case. Appellant further argues the parole instruction, as given, falsely states that parole law as applicable to the charge in the case at bar. In other words, appellant claims the charge "does not accurately state the true application of 'good conduct time' as the Appellant cannot accumulate 'good conduct time' in the case at bar as is" and the charge is, therefore, misleading.

However, the Texas Court of Criminal Appeals has already considered this issue in *Luquis v. State*, 72 S.W.3d 355 (Tex. Crim. App. 2002). There, the Court stated, "because the trial judge in this case instructed the jury according to the legislative dictate expressed in article 37.07, section 4(a), he did not commit error." *Luquis*, 72 S.W.3d at 363. Our review of the record shows the trial court charged the jury pursuant to article 37.07, section 4(a). *See* Tex. Code Crim. Proc. Ann. art. 37.07 §4(a).

Appellant requests we reconsider prior case law, including *Luquis*, in light of his argument that there are harmful consequences from "allowing such misleading instructions in aggravated cases like the case at bar." We decline to reconsider controlling precedent. *See Amos v. State*, No. 05-12-00908-CR, 2013 WL 3554305, *10 (Tex. App.—Dallas July 11, 2013, no pet.) (not designated for publication) (citing *Flores v. State*, 883 S.W.2d 383, 385 (Tex. App.—Amarillo 1994, pet. ref'd) ("As an intermediate appellate court, we are duty bound to follow the law declared by the Texas Court of Criminal Appeals on matters pertaining to the enforcement of

–13–

criminal laws . . . .").   Therefore, we overrule appellant's sixth issue on appeal. *Luquis*, 72 S.W.3d at 363.

### 6. *Motion for New Trial*

In his seventh issue, appellant contends the trial court erred in overruling his motion for new trial concerning juror misconduct in following the constitutionally invalid parole charge submitted to this jury in the punishment stage of the trial.  We review a trial court's denial of a motion for new trial under an abuse of discretion standard.  *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012).

Appellant argues "he is entitled to a new punishment hearing by his showing of harmful result at the new trial hearing by the jury considering parole in arriving at a punishment verdict based on a misleading jury charge."  Appellant's argument is based on his contention that the jury instruction was improper.  However, as discussed with regard to his sixth issue, we have already determined the instruction was proper.  *See Luquis*, 72 S.W.3d at 363.  Therefore, we conclude the trial court did not abuse its discretion in overruling appellant's motion for new trial.  *See McQuarrie*, 380 S.W.3d at 150.  We overrule appellant's seventh issue.

### 7. *Modification of the Judgment*

In its sole cross-point, the State contends we should reform the judgment to reflect the sentence that was orally pronounced.  The trial judge, in accordance with the jury's verdict, orally pronounced appellant's sentence as 60 years' imprisonment and a $10,000 fine.  The judgment reflects the correct number of years of imprisonment, but omits the fine, stating only "$ N/A."

The trial court's oral pronouncement controls over its written entry of sentence when there is a conflict.  *Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998) (holding that when there is a variation between the oral pronouncement of sentence and the written

memorialization of the sentence, the oral pronouncement controls).  Accordingly, we modify the trial court's judgment to include the $10,000 fine that was orally pronounced at sentencing.  *See Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).

As modified, we affirm the judgment of the trial court.

Do Not Publish
TEX. R. APP. P. 47
120847F.U05

/David L. Bridges/

DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROGELIO BELMONTE, Appellant

No. 05-12-00847-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F11-53040-L.
Opinion delivered by Justice Bridges.
Justices Moseley and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:
Include the $10,000 fine that was pronounced at sentencing.
As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered August 22, 2013

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE